**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| DAVID W. NOBLE, JR.          ) | |
|                             ) | |
|             Plaintiff,       ) | |
|                             ) | |
|                             )  Civ. No. 05-0936(EGS) | |
|        v.                   ) | |
|                             ) | |
| UNITED STATES POSTAL SERVICE, ) | |
| *et al.*,                   ) | |
|             Defendants.     ) | |
| _____ ) | |

**MEMORANDUM OPINION**

Plaintiff David W. Noble Jr., a long time employee of the United States Postal Service, brings this action under the Postal Reorganization Act, 39 U.S.C. §§ 1201 *et. seq.* alleging that defendant United States Postal Service ("USPS" or "Postal Service") violated the collective bargaining agreement ("CBA") between the Postal Service and co-defendants the National Association of Letter Carriers, AFL-CIO, and Branch 142, his local affiliate (collectively "NALC" or "Union"). Specifically, plaintiff alleges that the Postal Service breached Article 8, Section 5.F of the CBA when it required him to work more than ten hours per day on 25 days between October 5, 2004 and April 26, 2005. Compl. ¶ 8. Plaintiff also alleges that the Union has "failed and refused" to process grievances "on plaintiff's behalf concerning his allegation that the Postal Service breached the

CBA's overtime restrictions" such that the grievance process is
futile.  Plaintiff contends this constitutes a breach of the
Union's duty of fair representation ("DFR").  Accordingly,
plaintiff argues that he is excused from pursuing his breach of
contract claim through the grievance-arbitration process and can
instead bring it directly in this Court.

Defendant USPS moves to dismiss, or in the alternative for
summary judgment, pursuant to Rule 12(b)(1) and 12(b)(6) and Rule
56 of the Federal Rules of Civil Procedure on the grounds that
this Court lacks jurisdiction over plaintiff's breach of contract
claim because he has failed to exhaust his administrative
remedies via the grievance-arbitration procedure.[1]  Co-
defendants NALC and Branch 142 also move for summary judgment,
contending that the "undisputed record demonstrates that the
plaintiff never initiated the contractual grievance procedure as
to his claims" against USPS and therefore plaintiff has not shown
the futility of the grievance process.  Def.'s Mot. at 1.  They
also contend that plaintiff has produced no evidence of Union
hostility or arbitrary conduct that would constitute a breach of
the DFR.  Accordingly, defendants argue that they are entitled to
summary judgment.

---

[1]The Court has considered the evidence attached to defendant
USPS's motion and will therefore review it under only the
standard of review imposed by Rule 56 of the Federal Rules of
Civil Procedure.

Upon consideration of the motions, the responses and replies thereto, the applicable law and the entire record, the Court **GRANTS** defendants' motions and hereby dismisses this case with prejudice.

## I.    BACKGROUND

### A.    Factual Background

The plaintiff is a city letter carrier presently employed at the Friendship Station in Washington, D.C.  He has been employed as a letter carrier for the United States Postal Service since 1975 and served as a Union shop steward for the Friendship Station from 1999 to 2002.  Defendant NALC is the exclusive bargaining representative of all city letter carriers employed by the USPS.  At all times relevant to this case, USPS and NALC have been parties to a CBA that sets the terms and conditions of letter carrier employment.  Defendant Branch 142 is a local labor organization affiliated with NALC that administers the CBA for letter carriers employed at USPS facilities in Washington, D.C. *See* Union Statement of Undisputed Facts, ¶¶ 1-5.

Article 15 of the CBA contains a grievance-arbitration procedure which may be used to challenge any action by the USPS involving interpretation or application of the CBA.  Union's Mot. at 3.  The first step of the grievance procedure is "Informal Step A," which requires that

> (a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor

3

> within fourteen (14) days of the date on which the
> employee or the Union first learned or may reasonably
> have been expected to have learned of its cause. **This
> constitutes the Informal Step A filing date.** The
> employee, if he or she so desires may be accompanied
> and represented by the employee's steward or Union
> representative.

*Id.* (quoting CBA, Article 15, Sec 2.)(emphasis in original). The
Union is also empowered to commence the grievance procedure at
Informal Step A within 14 days without the required participation
of an individual grievant. *Id.* The oral conversation that takes
place at Informal Step A culminates with the supervisor writing
up the claim on a NALC Grievance Worksheet. The supervisor then
forwards the worksheet to the Station Branch Manager.

If the grievance is not resolved at the Informal Step A
meeting, the employee can then request that the Local Branch fill
out the required forms to appeal it to Formal Step A, the next
step of the grievance procedure, where the grievant is
represented for all purposes by a Union representative or
steward. USPS Mot. at 6. At Branch 142, as is typical, the
Branch President designates a Formal Step A representative for
the Union. This representative would then meet with an area
manager designated by the Postmaster of Washington D.C. to engage
in the Formal Step A meeting. During the time period relevant to
this case, the local Branch 142 President was Mr. Joseph Henry
and the designee for Formal Step A grievances for the Friendship
Station was Mr. Jacob Thompson.

4

If the grievance remains unresolved after Formal Step A, the Union may appeal to Step B, and then finally to final and binding arbitration.  At Step B and beyond, the grievance is handled by representatives appointed by the national NALC or by elected NALC national representatives.  Union Statement, ¶¶ 6-14.

**B.    Plaintiff's Claim**

Count I of plaintiff's complaint alleges that USPS violated the CBA by requiring plaintiff to work over 10 hours per day on 25 occasions between October 5, 2004 and April 26, 2005.  Compl. ¶ 8.  Plaintiff contends that he suffers from cervical degenerative disc disease, with chronic neck, back, and shoulder pain.  He represents that overtime work aggravates his condition and therefore he has never requested to work overtime by placing his name on the overtime desired list ("ODL").  *Id*. ¶ 6.  Though plaintiff acknowledges that he was paid penalty overtime in accordance with the CBA for the overtime hours he worked, he maintains that the terms of the CBA expressly prohibit ever requiring a letter carrier to work over 10 hours on a regularly scheduled day.  *Id.* ¶ 12.  Both the Postal Service and the Union disagree with plaintiff's interpretation of the contract, and contend that the CBA contemplates shifts longer than 10 hours per day because it specifically provides for "penalty overtime pay" for the hours worked beyond the 10 hour limit. *See* Union Reply at 4.

The plaintiff, during the period of October 5, 2004 through April 26, 2005, admittedly did not initiate any Informal Step A grievances with his supervisors or the Union shop stewards concerning his allegations of breach of the CBA.  *See* Pl.'s Dep., pp. 11-12; 16; 18-19.  USPS argues that because plaintiff has never attempted to invoke the grievance procedure for the alleged breaches of the CBA, he is barred by the terms of the CBA itself from bringing them directly against USPS in this Court. Plaintiff contends that this failure should be excused because NALC has breached its duty of fair representation to him such that the grievance procedure is futile.  Compl. ¶ 9. Specifically, in Count II of his complaint, plaintiff alleges that NALC and Branch 142 "have failed and refused to process grievances on plaintiff's behalf concerning plaintiff's allegations that USPS breached the CBA's overtime restrictions during the period from October 5, 2004 to April 26, 2005."  *Id.* ¶ 10.  Plaintiff further argues that "the grievance-arbitration procedure is entirely controlled by NALC and USPS and they have contrived to make the procedure unworkable" for him.  Under these circumstances, he contends, "any further resort to the grievance-arbitration procedure would be wholly futile."  *Id.* ¶ 9.

### C.   Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if the moving party has

shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Moreover, if the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

The Court must be wary of granting summary judgment in actions asserting a breach of the duty of fair representation because such decisions generally require the Court to probe the intent and state of mind of the bargaining agent to determine

7

whether its actions were discriminatory, arbitrary, or in bad faith. *Brown v. Gino Morena Enters.* 44 F. Supp. 2d 41, 45-46 (D.D.C. 1999)(citing *Caudle v. Pan American World Airways, Inc.*, 676 F. Supp. 314, 318 (D.D.C. 1987)).  Nonetheless, in order to survive a motion for summary judgment, plaintiff must offer concrete evidence regarding the bargaining agent's state of mind and cannot simply rely on conclusory allegations regarding intent.  *Id.*

   **D.   Statutory Framework**

   Plaintiff brings this action pursuant to the Postal Reorganization Act ("PRA"), 39 U.S.C. §1208(b).  This section is the statutory analogue to Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which applies to private sector litigants only.  Courts have held that case law developed under Section 301 is equally applicable to actions brought by Postal Service employees under Section 1208(b). *See Nat'l Ass'n of Letter Carriers v. U.S. Postal Serv.,* 590 F.2d 1171, 1174 (D.C. Cir. 1978); *Melendy v. U.S. Postal Serv.*, 589 F.2d 256, 260 (7th Cir. 1978).  Accordingly the Court will analyze plaintiff's claims under the "hybrid" structure utilized for Section 301 cases.

   Section 301 of the LMRA creates a very limited federal avenue of relief for breach of a collective bargaining agreement. See *Gino Morena Enters.*, 44 F. Supp. at 44.  "Because most

8

collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a Section 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance." *Id*. (quoting *Chauffeurs, Teamsters and Helpers, Local 391 v. Terry*, 494 U.S. 558, 564 (1990)).  The ensuing lawsuit comprises two causes of action: one against the employer for breach of contract and one against the union for breach of duty.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).  The two claims are "inextricably interdependent." *Id.* The Court must initially determine the threshold issue of whether a bargaining representative has breached its duty of fair representation before it can address the merits of plaintiff's breach of contract claim. *Gino Morena Enters.,* 44 F. Supp. at 44.


## II.   DISCUSSION

### A.   NALC did not breach its duty of fair representation

The Union has an obligation "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).  A breach of the Union's duty of fair representation occurs "only when a union's conduct toward a member of the

collective bargaining unit is arbitrary, discriminatory, or in
bad faith." *Vaca*, 386 U.S. at 190.  Mere negligence is
insufficient to establish that the Union acted arbitrarily.  *See*
*Watkins v. Communications Workers of America*, 736 F. Supp. 1156,
1161 (D.D.C. 1990).  "In considering DFR complaints that are
premised on assertions of arbitrary action, the courts and the
Board accord deference to a union, finding a DFR breach only if
the union's action "can be fairly characterized as so far outside
a 'wide range of reasonableness'" that it is entirely
irrational." *Thomas v. N.L.R.B.*, 213 F.3d 651 (D.C. Cir.
2000)(quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S.
65, 78 (1991)).

    The CBA requires an employee to have fully pursued his
grievance through the negotiated grievance process detailed above
before filing suit in Federal District Court.  *See* CBA, Article
15.  However, a plaintiff may be excused from this exhaustion
requirement if he can show that the Union breached its DFR by
refusing to process his grievances.  *Vaca*, 386 U.S. at 186 (an
employee-plaintiff may be excused from the exhaustion
requirements where he "has been prevented from exhausting his
contractual remedies by the union's wrongful refusal to process
the grievance.").  A "clear and positive showing of futility" is
generally required to excuse a failure to exhaust intra-union
remedies.  *Compofelice v. United Food and Commercial Workers*

*Local 400*, 1980 U.S. Dist. LEXIS 15074 *9-10 (D.D.C. 1980).

    **1.**   **Plaintiff has failed to show that the grievance process is futile**

     Plaintiff claims that the Union arbitrarily refused to process plaintiff's grievances, but he also admits that he never actually filed any grievances during the period in question. Accordingly, the Union argues that summary judgment is appropriate because there is no way as a matter of law that the Union could have refused to process grievances (such that it breached its DFR) when those grievances were never filed. The Court agrees.

     Plaintiff has failed to produce "competent evidence setting forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In his complaint, plaintiff contends the grievance process is "futile" and also that the Union has "failed and refused to process grievances on plaintiff's behalf" concerning this issue. *See* Compl. ¶¶ 9-10. Undermining this futility argument, however, is plaintiff's own admission that he never asked his Union representative to initiate a grievance regarding the 10 hour limit during this time period, nor did he start the Informal Step A process himself. Pl.'s Dep. at 16 ("I neither initiated grievances myself during that period, nor attempted to initiate grievances during that period."). Plaintiff's futility argument is further weakened by

his admission that he did ask his Union representative to file at least one grievance on his behalf during this time frame regarding a different issue, and the Union did in fact process that grievance.  Pl.'s Dep. at 60.

    In spite of the above admissions, and apparently as an alternative theory, plaintiff maintains summary judgment is inappropriate because "there is a triable issue as to whether plaintiff attempted to invoke the grievance procedure."  Pl's Opp'n at 12.  At his deposition, plaintiff advanced for the first time a theory that he had attempted to initiate a grievance regarding the overtime issue by sending "two or maybe three letters" to Mr. Joseph Henry, the president of Branch 142.  *Id.* at 12.  Plaintiff was unable to produce copies of these letters in either hard copy or electronic form and it is undisputed that Branch 142's records do not contain them.  Union Mot. at 4. Plaintiff testified he could not recall whether he sent the letters via certified mail or not, but in any event, he was unable to produce return receipts or any other proof of mailing. Plaintiff did not mention the letters in his complaint, nor did he claim that he attempted to grieve the overtime violations and those attempts were rebuffed; rather he only claimed that the grievance process was futile.  Plaintiff also failed to mention the alleged letters in the affidavit attached to his Motion for Partial Summary Judgment filed in this action in November, 2005.

"Courts have long held that a party may not create a
material issue of fact simply by contradicting its prior sworn
testimony." *Pyramid Securities Ltd. V. IB Resolution, Inc.*, 924
F.2d 1114, 1123 (D.C. Cir. 1991). "The objectives of summary
judgment would be seriously impaired if the district court were
not free to disregard the later testimony." *Id.* (quoting *Martin
v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir.
1988)). In *Pyramid*, the D.C. Circuit noted that "the prior sworn
statement will receive controlling weight unless the shifting
party can offer persuasive reasons for believing the supposed
correction." *Id.* As in this case, those reasons are less likely
to be available where the initial statement was made in an
affidavit, as opposed to a deposition, because "affidavits are
prepared at the affiant's own initiative." *Id.* In plaintiff's
affidavit, he makes only the same blanket allegations of futility
made in his complaint. He avers, "[s]ince 1993 the Union has
never used the grievance procedure to prevent USPS from requiring
me to work over ten hours, and has never used the grievance
procedure to obtain a remedy for me for being forced to work over
ten hours." Pl.'s Nov. 29, 2005 Aff. ¶ 29. The foregoing quote
is the only mention of the grievance procedure relating to the
overtime issue in the affidavit. It is notably silent on any
attempt by plaintiff to invoke the grievance procedure by sending

13

letters to Mr. Henry.[2]

Apart from the issue of the letters, there is ample evidence in the record demonstrating plaintiff's knowledge and successful employment of the grievance procedure throughout his 30 year history with the Union that defeats any plausible claim that the process is futile.  Plaintiff has established beyond doubt that he is extraordinarily well-versed in the grievance procedure and has invoked it countless times over the course of his career. For example, in his 2005 affidavit, plaintiff avers that he worked full-time for the Union for nearly fifteen years and has processed "thousands of grievances."  Pl.'s Nov. 29, 2005 Aff. ¶ 8.  The record contains additional evidence (including Mr. Noble's admission) that the Union processed 28 grievances involving him (as either the grievant or the Union representative) in 1999, one in 2004, and nine in 2005.  Pl.'s Dep. at 44-45.  In light of plaintiff's extensive experience in grieving disputes on behalf of himself and other Union members, a reasonable factfinder could not determine that the grievance process is futile.  Plaintiff's only evidence of futility is his improbable claim that he did not attempt to grieve the overtime issue by following the standard procedures but rather chose to do

---

[2] Plaintiff testified at his deposition that he did not mention the letters to Mr. Henry in his affidavit because he did not want to create a genuine issue of material fact that would preclude summary judgment in his favor.  Pl.'s Dep. at 41.  The Court finds this justification unpersuasive.

so by sending a few letters to the president of the branch, of which he made no copies, nor copied anyone else.  Plaintiff argues that he did not attempt to grieve the alleged violations through the standard procedures because his shop stewards had refused to initiate grievances on his behalf.  However, as noted above, the record reflects that plaintiff's shop steward did in fact initiate and process grievances on plaintiff's behalf before, during, and after the time period relevant to this lawsuit.  Furthermore, at Informal Step A, the employee has the option of initiating the grievance himself.  Plaintiff did not avail himself of this opportunity.

In order for a claim to survive a motion for summary judgment, the non-movant must produce more than unsupported allegations or merely colorable evidence.  *Liberty Lobby, Inc.*, 477 U.S. at 249-50.  Plaintiff has failed to do so.  Even accepting plaintiff's unsupported and uncorroborated allegations regarding the letters as true, the overwhelming record evidence indicates that plaintiff routinely and effectively used the grievance procedures.  Based on the pleadings, affidavits, depositions and other record evidence, the Court finds that plaintiff has not come close to the "clear and positive showing of futility" required to raise a genuine issue of material fact such that his claim of futility could survive.  *Compofelice*, 1980 U.S. Dist. LEXIS 15074 at *9-10.

15

## 2.    **Plaintiff has not adduced evidence of Union hostility**

Plaintiff also contends that "ample evidence of Union hostility is sufficient to demonstrate futility" of the grievance process.  Pl.'s Opp'n at 16.  While this may be true as a legal principle, plaintiff has failed to provide such evidence in this case.  As evidence of hostility, Mr. Noble references documents that relate to the charges that he brought against the Union leadership 13 years ago.  In several Union newsletters pertaining to the charges, Mr. Noble is compared to Joseph McCarthy for his "witch-hunt" style accusations of financial misconduct against the Union leadership.  *See* Pl.'s Opp'n, Ex M (documenting that the membership overwhelmingly voted to dismiss the charges).  Plaintiff contends that since he brought the charges in 1993, the Union has been hostile to him and he has been unable to successfully use the grievance process to remedy any of his complaints.  Pl.'s Opp'n at 16.  However, as discussed above, this contention is undermined by the evidence of numerous grievances involving Mr. Noble within the past 13 years and his own employment as a shop steward from 1999-2002.  Furthermore, it is undisputed that the Union has grieved multiple issues on Mr. Noble's behalf in 2004 and 2005 alone, the period subject to this lawsuit.  Finally, DFR claims are governed by a six-month statute of limitations.  *DelCostello*, 462 U.S. at 172.   Plaintiff's case

16

was filed on May 10, 2005.  Accordingly, any allegedly hostile conduct taking place before November 10, 2004 is time-barred.

While it is abundantly clear that Mr. Noble does not get along with the Union leadership, he has not adduced any evidence of hostility such that a reasonable jury could find that the grievance process is futile for him.

**B.   Plaintiff's Breach of Contract Claim against USPS is barred by the CBA**

"It is a well-settled rule of labor law that parties to a collective bargaining agreement normally must seek to resolve their contract disputes under agreed-upon grievance and arbitration procedures..." *Communications Workers of America v. AT&T*, 40 F.3d 426, 434 (D.C. Cir. 1994).  "The general rule in this circuit is that the exhaustion requirement may be waived in only the most exceptional circumstances." *Id.* at 432 (internal quotations omitted).  Our circuit has frequently reiterated the importance of the exhaustion requirement, and has recently held that exhaustion can be excused "on grounds of futility only when resort to administrative remedies is clearly useless."  *Ass'n of Flight Attendants-CWA, AFL-CIO, v. Chao*, 493 F.3d 155, 159 (D.C. Cir. 2007).

When a collective bargaining agreement contains a mandatory provision for dispute resolution through arbitration, an employer is entitled as a defense to rely on the plaintiff's failure to

17

utilize those procedures unless the plaintiff can show that the failure resulted from a breach of the duty of fair representation.  *Vaca*, 386 U.S. at 186.  As discussed above, plaintiff has failed to present facts tending to show that the grievance-arbitration process is futile or that the Union has breached its duty of fair representation in the form of hostile or arbitrary conduct.  Accordingly, this Court lacks jurisdiction to hear plaintiff's breach of contract claim and summary judgment is warranted in favor of USPS.

## III.  CONCLUSION

For the reasons stated above, defendants NALC and Branch 142's Motion for Summary Judgment is **GRANTED** and defendant USPS's Motion for Summary Judgment is **GRANTED.** This case is dismissed with prejudice.  A separate order accompanies this Memorandum Opinion.


**Signed:   Emmet G. Sullivan**
**           United States District Judge**
**           March 24, 2008**